IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RANDY L. GREENE | * | |
| *Plaintiff* | * | |
| v. | * | Case No: 1:13-cv-00653-MLG |
| YRC, INC. | * | |
| *Defendant* | * | |

*******************************************************************************

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Randy L. Greene, Plaintiff, by John B. Stolarz, his attorney, sues YRC, Inc., Defendant, trading as YRC Freight, and says:

1. The Plaintiff, Randy L. Greene, a Caucasian, 54 years old, has been employed by the Defendant, YRC, Inc., as a truck driver since 2002.

2. Defendant YRC, Inc. is an employer, with more than 50 employees, and subject to the Family and Medical Leave Act (sometimes referred to herein as the "FMLA" or the "Act"), 29 U.S.C. § 2601, *et. seq.*

3. Dr. Carl E. Brago, the Plaintiff's primary care physician has been treating the Plaintiff for high blood pressure for about 2 years. As of October 26, 2012, Plaintiff was already taking two blood pressure medications, and one for cholesterol, previously prescribed by Dr. Brago. Prior to this event, the Plaintiff visited Dr. Brago approximately every three months to monitor his high blood pressure and medical condition.

4. On October 26, 2012, the Plaintiff was working at Defendant's place of business, located at 6311 Lombard Street, Baltimore, Maryland (sometimes referred to as the "Baltimore Terminal.")

5. When he arrived at work on October 26, 2012, Plaintiff questioned Gary Chapman, his supervisor, who is African American, about a pay shortage. After a discussion of about 15 minutes, Gary Chapman became very angry and hostile toward the

Plaintiff, which caused the Plaintiff to experience pain and pressure in the chest, stomach pains, severe stress and anxiety resulting, and shaking of the hands.

      6. After meeting with Gary Chapman, the Plaintiff proceeded to prepare his truck for an out of state, long distance, delivery.  As he was doing so, the Plaintiff the pressure in the chest, stomach pain, stress and anxiety did not abate.

      7. Because Plaintiff believed that his medical condition impaired his ability to drive, Plaintiff, in compliance with 49 CFR § 392.3, asked John Reed, another employee, to inform his supervisor, Gary Chapman, that Plaintiff was having pain and pressure in the chest, stress and anxiety, and that his medical condition substantially impaired his ability to begin and continue the scheduled long distance delivery, and that he was going home and seeking medical treatment.  About 7 minutes later, Plaintiff telephoned his supervisor, Gary Chapman, and advised him that Plaintiff was feeling pain and pressure in his chest and a lot of stress and anxiety, and did not feel medically able to drive a commercial vehicle, that he was going home to obtain medical treatment with his primary care physician, and that he would have a doctor's note for him.

      8.  Plaintiff went straight home and made an appointment with Carl E. Brago, M.D. his primary care physician for later the same day.  Dr. Carl E. Brago examined the Plaintiff later that day, determined that his blood pressure was elevated and recommended that the Plaintiff take one week off from work.  Documentation from the physician was faxed over to Gary Chapman, Plaintiff's supervisor, later that day.

      9.  Later on the afternoon of October 26, 2012, Gary Chapman telephoned the Plaintiff and stated that he was treating the Plaintiff's leaving the premises, as a voluntary quit, on the part of the Plaintiff.  Plaintiff understood this to mean that he was terminated and that he should not return to work.  Gary Chapman did not discuss the note from Dr. Brago which was faxed to him, and did not request any additional medical documentation or certification pertaining to Plaintiff's medical condition.   Defendant did not request any further medical documents or certification after that date.

      10.  After his termination Plaintiff requested appropriate FMLA forms from the Defendant to document his FMLA request.   Defendant refused to provide the forms.

## COUNT ONE
### Interference with FMLA Rights

11. The foregoing paragraphs are incorporated herein.

12. An employee who is unable to perform the essential functions of his position because of a serious health condition is entitled to a leave of absence under the FMLA.

13. The chronic high blood pressure, severe chest pains, severe anxiety, experienced by the Plaintiff on October 26, 2013, constituted serious health conditions which qualified for coverage by the FMLA.

14. In spite of the fact that the Plaintiff was suffering from a serious medical condition, Defendant terminated the Plaintiff on the afternoon of October 26, 2012.

15. The Plaintiff qualified for coverage by the FMLA on October 26, 2012 because he had been employed by the Defendant for over twelve months prior to seeking FMLA leave.

16. Terminating the Plaintiff on October 26, 2012 because he requested FMLA qualifying medical leave, constituted unlawful interference with Plaintiff's rights under the FMLA.

17. Defendant's unlawful actions, in terminating the Plaintiff, were willful and have resulted in a significant loss to the Plaintiff of wages, benefits, expenses, and other such damages.

Wherefore, Plaintiff demands compensatory and liquidated damages against Defendant in the amount of Three Hundred Thousand Dollars ($ 300,000.00), punitive damages of One Million Dollars ($ 1,000,000.00), attorney fees, the costs of this action,

## COUNT THREE
### Retaliation for Exercising FMLA Rights.

18. The foregoing paragraphs are incorporated herein

19. Terminating the Plaintiff because he exercised, or attempted to exercise his rights under the Family Medical Leave Act, constitutes retaliation in violation of 29 U.S.C. § 2615(a).

20. As a result of the retaliation, the Plaintiff has been damaged.

Wherefore, Plaintiff demands compensatory and liquidated damages against Defendant in the amount of Three Hundred Thousand Dollars ($ 300,000.00), punitive damages of One Million Dollars ($ 1,000,000.00), attorney fees, the costs of this action.

## COUNT THREE
### Violation of 42 U.S.C. § 1981

21. The foregoing paragraphs are incorporated herein.

23. Gary Chapman, the Baltimore Terminal Manager, has demonstrated hostility toward Caucasians in the past, when he was employed as the Operations Manager of Defendant's Washington DC Terminal. Gary Chapman announced, at that time, that he was going to make the DC YRC Terminal into an "all black terminal."

22. Since his arrival at the Baltimore Terminal, Gary Chapman, has been using the disciplinary rules to terminate older Caucasian employees from YRC.

24. The following are examples of racially disparate treatment practices employed by Gary Chapman at the Baltimore Terminal:

   A. Delray Nance, an African American driver has stolen and cashed another employee's payroll check at the Baltimore Terminal, but was not disciplined because of it. In contrast, Dennis Lewis, an older Caucasian driver was charged with stealing a magazine and a pair of gloves at a Sheetz facility in North Carolina, while driving for the Defendant, and even though he was not convicted, he was terminated by Gary Chapman, without even being asked to explain the event.

   B. The Plaintiff has complained to the Human Resources Department that Gary Chapman had stolen $ 300.00 from the Plaintiff, but he has not been disciplined for it.

   C. Dave Keegly, another African American driver for the Defendant stole company property, but not disciplined or terminated because of it.

25. Since arriving at the Baltimore Terminal about two years ago, Gary Chapman has treated older Caucasian employees differently than African employees. Since his arrival, Gary Chapman has terminated the following older Caucasian employees on, what are believed to be pre-textual reasons, usually related to illness or injury: Mark Suit, Steve Ruff, Phil Finch, Wayne Herr, David Bailey, Bernie Wagner, Brian Titus, and John Odenhal. The termination of the older Caucasian employees is out of proportion to the African American

employees terminated during that time.

     26. By terminating the Plaintiff without requesting additional medical certification, Defendant has through the actions of Gary Chapman, and his superiors, discriminated against the Plaintiff, Randy Greene, because of his Caucasian race, with respect to his compensation, terms, conditions, or privileges of employment, in violation of 42 U.S.C. § 1981. Gary Chapman used the medical leave request by the Plaintiff as a convenient excuse to remove another older Caucasian employee from the employment rolls of the Baltimore Terminal.

     27. By terminating the Plaintiff on the basis of his race, Defendant has infringed upon, and deprived, the Plaintiff of his right to make and enforce contract and to the full and equal benefit of

     Wherefore, Plaintiff demands compensatory and liquidated damages against Defendant in the amount of Three Hundred Thousand Dollars ($ 300,000.00), punitive damages of One Million Dollars ($ 1,000,000.00), attorney fees, the costs of this action,

/s/_____
John B. Stolarz
The Stolarz Law Firm
6509 York Road
Baltimore, MD 21212
(410) 532-7200

Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

     Randy L. Greene, Plaintiff, by John B. Stolarz, his attorney, demands a jury trial in this action.

/s/_____
John B. Stolarz

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this March 28, 2013 a copy of the foregoing Amended Complaint, together with a comparison copy noting changes, additions, and delections, was served through the Court's electronic filing system, on:

Crystal E. Barnes, Esquire
Bernard P. Jeweler, Esquire
Ogletree Deakins
1909 K Street, N.W.
Washington, DC 20006,

Attorneys for Defendant.

                                              /s/
                                              John B. Stolarz

                                              Attorney for Plaintiff

W:\5024\Pleadings\ct-amd.wpd