IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RANDY L. GREENE                    *

         Plaintiff        *

         vs.              *    CIVIL ACTION NO. MJG-13-0653

YRC, INC.                          *
(d/b/a/ YRC FREIGHT)
                        *

         Defendant

*       *       *       *       *       *       *       *       *


MEMORANDUM AND ORDER RE: MOTION TO DISMISS

    The Court has before it Defendant's Motion to Dismiss[1]

[Document 19] and the materials submitted relating thereto.  The

Court finds a hearing unnecessary.


I.    BACKGROUND[2]

    Plaintiff Randy L. Greene ("Plaintiff" or "Greene") was

employed by YRC Inc. ("Defendant" or "YRC Freight") from 2002

until 2012.  On October 26, 2012, YRC Freight terminated

Greene's employment.  On January 31, 2013, Plaintiff the instant

lawsuit in the Circuit Court for Baltimore City, Maryland.  On

---

[1]    The Memorandum filed in support of the instant motion
indicates that the motion applies to Plaintiff's Amended
Complaint.  See Memorandum in Support of Defendant's Motion to
Dismiss Amended Complaint [Document 19-1].
[2]    The "facts" herein are as alleged by Plaintiff and are not
necessarily agreed upon by Defendant.

February 28, 2013, Defendant timely removed the case to federal court.

In the Amended Complaint [Document 16], Green presents claims in three counts:

Count One:      Interference with Family Medical Leave Act ("FMLA") Rights, 29 U.S.C. § 2601 et seq.

Count Two:      Retaliation for Exercising FMLA Rights

Count Three:    Violation of 42 U.S.C. § 1981

By the instant motion, Defendant seeks dismissal of all claims pursuant to Federal Rule of Civil Procedure 12(b)(6).


II.   DISMISSAL STANDARD

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)[3] tests the legal sufficiency of a complaint. A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted).  When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to

---

[3]    All "Rule" references herein are to the Federal Rules of Civil Procedure.

the plaintiff.  However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]." Id.  A complaint must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Twombly, 550 U.S. at 557).  Thus, if "the well-pleaded facts [contained within a complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (alteration in original)).

III. DISCUSSION

A.   Family Medical Leave Act

1.   Alleged Facts

From 2002 until October 26, 2012, Plaintiff was employed by YRC Freight as a truck driver.  In or around 2011, Plaintiff began receiving treatment for high blood pressure from his

primary care physician Dr. Carl W. Brango.[4]  Prior to October 26,

2012, "Plaintiff visited Dr. Brago [sic] approximately every

three months to monitor his high blood pressure and medical

condition." [Document 16] at 1.  Dr. Brango prescribed

Plaintiff two blood pressure medications and one cholesterol

medication, all of which Plaintiff was taking as of October 26,

2012.

When he arrived at work at Defendant's Baltimore Terminal

on October 26, 2012, Plaintiff and his supervisor Gary Chapman

("Chapman") had a fifteen-minute discussion "about a pay

shortage" that left Plaintiff "experience[ing] pain and pressure

in the chest, stomach pains, severe stress and anxiety

resulting, and shaking of the hands."  Id. at 1-2.  The

"pressure" in Plaintiff's "chest, stomach pain, stress, and

anxiety" did not abate as Plaintiff prepared his truck for an

out-of-state delivery.  Id. at 2.

Believing that these symptoms impaired his ability to make

the long-distance delivery, Plaintiff asked a fellow employee to

inform Chapman that he was experiencing chest pain, chest

pressure, and anxiety that substantially impaired his ability to

---

[4]    The parties' filings refer to Dr. Brango as "Dr.
Carl E. Brago."   However, a note from Plaintiff's
physician contains the signature of "Carl W Brango
MD." [Document 8] at 2.  Accordingly, the Court will
refer to the physician as "Dr. Brango."

make the scheduled delivery and that he was going home to seek medical treatment. Roughly seven minutes after speaking with his fellow employee, Plaintiff telephoned Chapman directly:

> advis[ing] him that Plaintiff was feeling pain and pressure in his chest and a lot of stress and anxiety, and did not feel medically able to drive a commercial vehicle, that he was going home to obtain medical treatment with his primary care physician, and that he would have a doctor's note for him.

Id.

Plaintiff was examined by Dr. Brango that day – October 26, 2012. Dr. Brango "determined that [Plaintiff's] blood pressure was elevated and recommended that the Plaintiff take one week off from work. Documentation from [Dr. Brango] was faxed over to Gary Chapman [that afternoon]."[5]  Id.  The note from Dr. Brango stated:

> RANDY GREENE was seen in the office on Oct 26, 2012.
>
> He is having health issues..
>
> Excused for period from 10/26/2013 to 11/4/2012.
>
> RANDY should return to work on 11/5/2012.
>
> Restrictions: None.

[Document 8] at 2.

---

[5]   The Amended Complaint does not state whether Plaintiff or Dr. Brango faxed the documentation to Chapman.

Chapman telephoned Plaintiff later in the afternoon on October 26, 2012. Chapman informed Plaintiff that "[his] leaving the premises" was being treated "as a voluntary quit." [Document 16] at 2. "Plaintiff understood this to mean that he was terminated and that he should not return to work." Id. Chapman neither discussed the note from Dr. Brango, nor requested additional documentation from Plaintiff. "After his termination Plaintiff requested appropriate FMLA forms from the Defendant to document his FMLA request," but Defendant refused to provide the forms. Id.

2.   Interference Claim (Count I)

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." Id. § 2615(a)(1).

> To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that:
>
> (1) she was an eligible employee;

(2) her employer was covered by the statute;

(3) she was entitled to leave under the
    FMLA;

(4) she gave her employer adequate notice of
    her intention to take leave; and

(5) the employer denied her FMLA benefits to
    which she was entitled.

Rodriguez v. Smithfield Packing Co., Inc., 545 F. Supp. 2d 508,
516 (D. Md. 2008); see also Sanders v. City of Newport, 657 F.3d
772 (9th Cir. 2011); Burnett v. LFW Inc., 472 F.3d 471, 477 (7th
Cir. 2006).

Defendant contends that Plaintiff's Amended Complaint fails

to allege adequately the eligibility, entitlement, and notice

elements.[6]  The Court will address each of these elements in

turn.

---

[6]  Defendant's Motion to Dismiss does not state that Plaintiff
failed to allege sufficiently the "employer" element.  The FMLA
defines an "employer" as "any person engaged in commerce or in
any industry or activity affecting commerce who employs 50 or
more employees for each working day during each of 20 or more
calendar workweeks in the current or preceding calendar year."
29 U.S.C. § 2611(4)(A)(i).  The Amended Complaint states that
"Defendant YRC, Inc. is an employer, with more than 50
employees, and subject to the [FMLA]."  [Document 16] at 1.  The
Court finds that Plaintiff has pled adequately the "employer"
element.
    Further, the Motion to Dismiss does not state that
Plaintiff failed to allege sufficiently the "denial" element.
The Amended Complaint states that "Defendant refused to provide
the [FMLA] forms" Plaintiff requested and that "[t]erminating
the Plaintiff on October, 26, 2012 because he requested FMLA
qualifying medical leave, constituted unlawful interference with
Plaintiff's rights under the FMLA."  [Document 16] at 2-3.

a.  <u>"Eligible Employee"</u>

Defendant asserts that "Plaintiff's Complaint fails to include allegations that he was indeed eligible for the FMLA's protections." [Document 19-1] at 5.  An "eligible employee" is an individual:

> who has been employed –
>
> (i) <u>for at least 12 months</u> by the employer with respect to whom leave is requested under section 2612 of this title; <u>and</u>
>
> (ii) <u>for at least 1,250 hours</u> of service with such employer <u>during the previous 12-month period</u>.

29 U.S.C. § 2611(2)(A) (emphasis added).  Thus, a plaintiff's complaint must allege <u>both</u> that the plaintiff worked for the employer for at least 12 months prior to the FMLA request <u>and</u> that in the 12 months prior to the request, the plaintiff worked for the employer for at least 1,250 hours.  <u>See</u> <u>Anusie-Howard v.</u> <u>Bd. of Educ. of Baltimore Cnty.</u>, No. WDQ-12-0199, 2012 WL 1964097, at *3 (D. Md. May 30, 2012).

The Amended Complaint states that Plaintiff was employed by YRC Freight from 2002 until his termination on October 26, 2012, thus satisfying the one-year element of the "eligible employee" standard.  However, as to the 1,250-hour element, the Amended

---

Assuming that Plaintiff was entitled to FMLA leave, the Court finds that Plaintiff has pled adequately the "denial" element.

Complaint does not state explicitly that Plaintiff worked the requisite number of hours necessary to be an eligible employee. Because Plaintiff could simply allege that he met the hour requirement, the Court shall require an explicit statement to this effect in an amendment to the Complaint.

The Court will assume that Plaintiff will file a Supplement adequately alleging his eligible employee status and will address the other issues presented by the instant motion.

b.    "Entitled to Leave"

An eligible employee is entitled to FMLA leave in five circumstances.  See 29 U.S.C § 2612(a)(1).  Plaintiff has alleged facts sufficient to present a plausible claim that he was entitled to take FMLA leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  Id. § 2612(a)(1)(D).

"The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." Id. § 2611(11)(B).  More specifically:

> A  serious  health  condition  involving
> continuing  treatment  by  a  health  care
> provider  includes  any  one  or  more  of  the
> following:
>
> (a)  Incapacity and treatment.  A period of

incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

. . . .

(c) Chronic conditions. Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

(1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3) May cause episodic rather than a

> continuing period of incapacity
> (e.g., asthma, diabetes, epilepsy,
> etc.).

29 C.F.R. § 825.115(a), (c).

The Amended Complaint alleges that "[t]he chronic high blood pressure, severe chest pains, [and] severe anxiety experienced by the Plaintiff on October 26, 201[2] constituted serious health conditions."[7] [Document 16] at 3. Defendant contends that dismissal is appropriate because "Plaintiff has failed to establish that he indeed suffered from a serious health condition that rendered him unable to perform his job." [Document 19-1] at 6. Specifically, Defendant claims that: (1) Plaintiff's symptoms "arguably do[] not meet the definition of 'serious health condition,'" (2) "Plaintiff does not allege that he [informed his employer] that he was suffering from chronic high blood pressure," (3) Plaintiff "does not allege that he was diagnosed with any functional impairment," and (4) Plaintiff "does not allege . . . that he indeed was 'unable to perform the functions of his job.'" Id.

Plaintiff has alleged that he experienced high blood pressure, chest pains, and anxiety. A determination of whether

---

[7]  The Amended Complaint indicates that these symptoms were "experienced by Plaintiff on October 26, 2013." [Document 16] at 3 (emphasis added). As that date had not yet occurred at the time of the filing of the Amended Complaint, the Court takes this to be a typographical error.

those symptoms qualify as a "serious health condition" or "chronic serious health condition" under the FMLA is inappropriate at the dismissal stage.  Cf.  Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1294-96, 1299 (11th Cir. 2006) (noting that there was a genuine issue of material fact as to whether plaintiff's anxiety constituted a chronic serious health condition, which precluded summary judgment on the issue).  This Court has acknowledged that "it is questionable whether 'high blood pressure' . . . qualif[ies] as a 'serious health condition' that ma[kes an individual] 'unable to perform the functions' of his delivery position and thus eligible for FMLA leave."  Mondonedo v. Frito-Lay, Inc., No. PJM 11-570, 2012 WL 1632834, at *4 (D. Md. May 8, 2012).  However, other courts and quasi-judicial agencies have determined that the individual symptoms Plaintiff experienced on October 26, 2012 can qualify as a serious health condition under the FMLA. See, e.g., Oswalt v. Sara Lee Corp., 74 F.3d 91, 93 (5th Cir. 1996) (High Blood Pressure - "The high blood pressure, however, did apparently involve continued treatment and therefore could be considered a 'serious health condition.'"); Hayduk v. City of Johnstown, 580 F. Supp. 2d 429, 466 (W.D. Pa. 2008) (High Blood Pressure - "His high blood pressure certainly qualifies [as a chronic serious health condition]; he has been diagnosed since

at least 2001, visits his cardiologist once or twice a year for follow[-]up evaluations, and takes prescription medications to control it."); <u>Young v. U.S. Postal Serv.</u>, AT-0752-97-0304-I-1, 1998 WL 350359 (M.S.P.B. June 22, 1998) (<u>Anxiety</u> – "[T]he evidence shows that the appellant suffered from a serious health condition, i.e., depression and anxiety, . . . ."). <u>But see</u> <u>Boyce v. New York City Mission Soc.</u>, 963 F. Supp. 290, 299 (S.D.N.Y. 1997) (<u>Chest Pain</u> – "Plaintiff's alleged condition of 'shortness of breath and chest pains' . . . qualifies as a minor health condition and not a 'serious health condition' covered by the FMLA.").

Defendant contends that Plaintiff was not entitled to FMLA leave because he was not diagnosed with a functional impairment. However, "[t]here is no requirement in the [FMLA] that an employee be diagnosed with a serious health condition before becoming eligible for FMLA leave." <u>Stekloff v. St. John's Mercy Health Sys.</u>, 218 F.3d 858, 863 (8th Cir. 2000). Further, contrary to Defendant's assertion that because the note from Dr. Brango stated that Plaintiff was under "no restrictions," Plaintiff was not unable to perform the functions of his job and thus did not have a serious health condition, the Court reads the "no restrictions" provision as applying to Plaintiff's return to work <u>after</u> the one-week period.

Plaintiff is not required to plead facts sufficient to
prove his claim, but must only plead facts sufficient to present
a plausible, rather than a merely conceivable, claim.  See
Monroe v. City of Charlottesville, Va., 579 F.3d 380, 385-86 (4th
Cir. 2009) (summarizing 12(b)(6) standard).  The Court finds it
unreasonable to require Plaintiff to allege detailed facts as to
every element required to establish that he had a serious health
condition.  Plaintiff has alleged that he experienced severe
chest pains and anxiety on October 26, 2012, that he has been
treated for high blood pressure for about two years, that he
regularly takes blood pressure medication, that he visits Dr.
Brango approximately every three months to monitor his
condition, and that Dr. Brango determined his blood pressure was
elevated on October 26, 2012 and recommended Plaintiff take one
week off from work.  Thus, the Court determines that Plaintiff
has pled adequately that he had a serious health condition, as
defined by the FMLA and its corresponding regulations, on
October 26, 2012.


            c.    "Adequate Notice"

    "An employee is mandated to provide notice to her employer
when she requires FMLA leave."  Rhoads v. F.D.I.C., 257 F.3d
373, 382 (4th Cir. 2001); see also; 29 U.S.C. § 2612(e)(2); 29

                          14

C.F.R. §§ 825.302, 825.303.  When an employee seeks to take FMLA

leave due to a serious health condition, and the need for leave

is foreseeable, the employee is required to:

> make a reasonable effort to schedule the
> treatment so as not to disrupt unduly the
> operations of the employer . . . and . . .
> shall provide the employer with not less
> than 30 days' notice, . . . except that if
> the date of the treatment requires leave to
> begin in less than 30 days, the employee
> shall provide such notice as is practicable.

29 U.S.C. § 2612(e)(2).

However, the FMLA regulations acknowledge that an

employee's need for FMLA-qualifying leave may be unforeseeable.[8]

When the approximate timing of the need for leave is not

foreseeable, an employee must provide notice to the employer as

soon as practicable under the facts and circumstances of the

particular case."  29 C.F.R. § 825.303(a).  The notice must

---

[8]    Although neither the Amended Complaint, nor the Motion to
Dismiss addresses this issue, given that Plaintiff sought leave
after experiencing "pressure in the chest, stomach pain, stress,
and anxiety" that arose on October 26, 2012 [Document 16] at 1-
2, there is a plausible claim that the need for leave was not
foreseeable.  Thus, the applicable federal regulation in this
case is 29 C.F.R. § 825.303 - Employee notice requirements for
unforeseeable FMLA leave, and not 29 C.F.R. § 825.302 - Employee
notice requirements for foreseeable FMLA leave.  However, the
Fourth Circuit has acknowledged that "the 'substance and other
particulars of [a § 303(b) notice] must conform to § 825.302
(relating to notice of a need for leave that is foreseeable ),
and only the timing of its delivery is affected by § 825.303.'"
Peeples v. Coastal Office Products, Inc., 203 F. Supp. 2d 432,
448-49 (D. Md. 2002) (alteration in original) (citations
omitted).

contain "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." Id. § 825.303(b). Such information "may include that a condition renders the employee unable to perform the functions of the job; . . . and the anticipated duration of the absence." Id.; see also Rodriguez v. Smithfield Packing Co., Inc., 545 F. Supp. 2d 508, 522 (D. Md. 2008) ("[A]n employee must give[] some level of detail regarding the nature of the illness and the likely duration of the absence such that the employer is able to reasonably conclude that the absence may qualify as FMLA leave.").

"Case law and federal regulations make it clear . . . that employees do not need to invoke the FMLA in order to benefit from its protections. The regulations do not require the employee to 'expressly assert rights under the FMLA or even mention the FMLA . . . .'"[9] Dotson v. Pfizer, Inc., 558 F.3d

---

[9]    The FMLA regulations explain this requirement in detail:

> When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. When an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA-protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave.

284, 295 (4th Cir. 2009); see also Mondonedo v. Frito-Lay, Inc.,
No. PJM 11-570, 2012 WL 1632834, at *3 (D. Md. May 8, 2012).

After an employee provides the required notice in
circumstances when the need for leave was unforeseeable, "[t]he
employer will be expected to obtain any additional required
information through informal means."[10]  29 C.F.R. § 825.303(b);
see also Brushwood v. Wachovia Bank, N.A., 520 F. App'x 154, 157
(4th Cir. 2013); Rhoads, 257 F.3d at 382-83.  "Without further
details of the specific nature of an employee's illness,
however, information merely indicating that an employee is
'sick' is insufficient to put an employer on notice that FMLA
leave may be needed." Rodriguez, 545 F. Supp. 2d at 518.  Thus,
for example, "[c]alling in 'sick' without providing more
information will not be considered sufficient notice to trigger
an employer's obligations under the Act."  29 C.F.R. §
825.303(b).

Defendant contends that dismissal is appropriate because
Plaintiff did "not allege[] that he expressly asked Defendant

---

29 C.F.R. §§ 825.302(c) (foreseeable leave), 825.303(b)
(unforeseeable leave).
[10]    For example, after an employee makes a request for FMLA-
protected leave due to a serious health condition, the "employer
may require that [the] request for leave . . . be supported by a
certification issued by the health care provider of the eligible
employee."  29 U.S.C. § 2613(a).

for FMLA leave or otherwise communicated . . . an alleged
history of chronic high blood pressure," but instead asked a
coworker "to vaguely notify [Chapman]," subsequently made
similar "vague remarks about his bodily aches" to [Chapman], and
then "fax[ed] a vague doctor's note." [Document 19-1] at 8.
Defendant relies heavily on <u>Mondonedo v. Frito-Lay, Inc.</u>, a
decision from this Court that granted summary judgment in favor
of the employer on an FMLA interference claim. In that case,
plaintiff Mondonedo called his supervisor "and informed her that
he was not '<u>feeling well</u>'" and would not be coming to work.
<u>Mondonedo</u>, 2012 WL 1632834, at *2 (emphasis added). He did not
provide his employer with doctors' notes until six days after
initially calling in sick, even though he visited the doctor
twice during that period. In addition, the notes came from two
different doctors and were conflicting – one called for "sick
leave" from 01/09/2009 to 01/23/2009 and one stated "off work"
from 01/12/2009 to 01/14/2009. Further, Mondonedo was not in
contact with his employer from the date he faxed the doctors'
notes until another six days later when he returned to work and
was fired. Based on those facts, the court determined that
"[a]lthough Mondonedo may have done more than just call in
'sick,' he did not give [his employer] enough information to

determine whether he might have a serious medical condition."
Id. at *4.

The instant case does not present the situation addressed
in Mondonedo.  First, Plaintiff asked a fellow employee to
inform his supervisor Chapman that he was experiencing chest
pain, chest pressure, and anxiety that substantially impaired
his ability to make a scheduled out-of-state delivery and that
he was going home to seek medical treatment.  Second, Plaintiff
then telephoned Chapman and informed him that he:

> was feeling pain and pressure in his chest
> and a lot of stress and anxiety, and did not
> feel medically able to drive a commercial
> vehicle, that he was going home to obtain
> medical treatment with his primary care
> physician, and that he would have a doctor's
> note for him.

[Document 16] at 2.  Contrary to Defendant's contention, this
qualifies as more than "vague remarks about [Plaintiff's] bodily
aches."  [Document 19-1] at 8.  Third, after Plaintiff saw Dr.
Brango on the afternoon of October 26, 2012, a note from Dr.
Brango was faxed to Chapman that day.  The note indicated that
Plaintiff was "having health issues," was excused from work from
October 26 to November 4, and that he should return to work on
November 5 with no restrictions.  [Document 8] at 2.  That same
afternoon, Chapman telephone Plaintiff and stated that his
leaving the work site was being considered a voluntary quit.

Defendant contends that the note from Dr. Brango was insufficient to put Defendant on notice that Plaintiff had a serious health condition and needed FMLA leave. In support of its position, Defendant cites to Lackey v. Jackson County, an unreported case from the U.S. District Court for the Middle District of Tennessee. In Lackey, the court concluded that the doctors' notes provided by plaintiff Lackey were insufficient to put the defendant employer on notice of the need for FMLA leave because the notes gave excuses for only three days of absence from work, one of which Lackey was not scheduled to work, when Lackey actually missed at least eight additional days of work for which no notes were provided. No. 2:01-0058, 2003 U.S. Dist. LEXIS 25686, at *19-20, 50-51, 56-58. (M.D. Tenn. Jan. 3, 2003). The notes stated that Lackey was excused from work and that his "condition" caused his absence. The court determined that those notes, combined with the fact that whenever Lackey was absent from work his wife would inform his employer that he was "sick" and would be out of work for three or four days, were insufficient to apprise the employer of Lackey's need to take FMLA-qualifying leave. Id.

It is important to recognize that "[w]hen the need for FMLA is unforeseen, the Court's analysis of the adequacy of notice does not occur in a factual vacuum." Rodriguez, 545 F. Supp. 2d

at 516.  In this case, while Plaintiff's note from Dr. Brango is
by no means detailed, it is at least plausible that the note,
combined with Plaintiff's notice to his colleague, and telephone
conversation with his supervisor Chapman, were sufficient to put
Defendant on notice that Plaintiff was requesting FMLA leave.

It is also plausible that Plaintiff's notice to Defendant
triggered Defendant's obligations as an employer under the FMLA
to obtain more information.  However, Plaintiff was not given an
opportunity to provide that information, as Defendant terminated
his employment the same day that Plaintiff claims he attempted
to take FMLA leave.

The Court finds that Plaintiff has alleged facts sufficient
to present a plausible claim that Defendant had adequate notice
of his intent to take FMLA leave.


d.   Denial of FMLA Benefits

Plaintiff alleges that Defendant interfered with his rights
under the FMLA by terminating his employment after he requested
FMLA leave.  [Document 16] at 3.  Defendant contends that it
terminated Plaintiff's employment because he left the worksite
without permission.  Specifically, Defendant claims that
Plaintiff received a letter of discharge on October 26, 2012
because he "le[ft] the worksite without first obtaining approval

from management[, which] amounted to a voluntary quit and loss of seniority." [Document 19-1] at 3.

"[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." Edgar v. JAC Products, Inc., 443 F.3d 501, 508 (6th Cir. 2006). Regarding termination of employment, "[a]n employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." Arban v. W. Pub. Corp., 345 F.3d 390, 401 (6th Cir. 2003).

Plaintiff does not contend that he was already on FMLA leave when he left the worksite on October 26, 2012. Instead, Plaintiff left work that day because he felt medically unable to drive a commercial vehicle and wanted to see a doctor. That same day, Defendant terminated Plaintiff's employment. Assuming the facts alleged by Plaintiff, it is plausible to conclude that Plaintiff would not have been terminated that day had he not left the work site to seek medical treatment.

3.   Retaliation Claim (Count II)

Plaintiff alleges that Defendant unlawfully retaliated against him in violation of the FMLA by terminating his employment on October 26, 2012 "because he exercised, or attempted to exercise his rights under the [FMLA]."  [Document 16] at 3.

The rights afforded to employees under the FMLA include protection from retaliation for exercising their rights under the FMLA.  See Dotson v. Pfizer, Inc., 558 F.3d 284, 294 (4th Cir. 2009).  Although the FMLA does not contain an explicit prohibition against retaliation, the FMLA regulations state that the "prohibition against 'interference' prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."  29 C.F.R. § 825.220(c).  Specifically, "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions."  Id.  To succeed on an FMLA retaliation claim, a plaintiff must prove:

> [1]   that he engaged in protected activity,
>
> [2]   that the employer took adverse action against him, and
>
> [3]   that the adverse action was causally connected to the plaintiff's protected activity

Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006) (internal quotation marks omitted).

Plaintiff has pled adequately that he engaged in protected activity by attempting to take FMLA leave.  Further, Plaintiff has alleged that he "experienced an adverse employment action (termination)."  Yashenko, 446 F.3d at 551.  It is undisputed that the termination occurred on October, 26, 2012, which is the very day that Plaintiff sought to take FMLA leave.  As the Fourth Circuit noted in Yashenko, "[w]hile evidence as to the closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.'"  Id.

In this case, the close temporal connection between Plaintiff's attempt to exercise FMLA rights and his termination – the same day, October 26, 2012 – satisfies the pleading standard for a causal connection between the protected activity and the adverse action.

B.    42 U.S.C. § 1981 Claim (Count III)

1.    The Statute

42 U.S.C. § 1981 was originally enacted by Congress during the post-Civil War Reconstruction Era as part of the Civil Rights Act of 1886.  It provides:

All persons within the jurisdiction of the
United States shall have the same right in
every State and Territory to make and
enforce contracts, to sue, be parties, give
evidence, and to the full and equal benefit
of all laws and proceedings for the security
of persons and property as is enjoyed by
white citizens . . . .

42 U.S.C. § 1981(a) (2006). Section 1981 explains that "'make

and enforce contracts'" includes the "termination of contracts,

and the enjoyment of all benefits, privileges, terms, and

conditions of the contractual relationship." Id. § 1981(b).

In its Motion to Dismiss, Defendant incorrectly argues that

Plaintiff must set forth a prima facie case of discrimination

under § 1981 to survive dismissal. See [Document 19-1] at 11-

12. However, the United States Supreme Court has noted that

"under a notice pleading system, it is not appropriate to

require a plaintiff to plead facts establishing a prima facie

case." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002),[11]

overruling on other grounds recognized by Francis v. Giacomelli,

588 F.3d 186 (4th Cir. 2009); see also Fox v. City of

---

[11]    Swierkiewicz dealt with a claim brought pursuant to Title
VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.,
which is analyzed under McDonnell Douglas. See generally
Swierkiewicz, 534 U.S. at 510-11 (citing McDonnell Douglas, 411
U.S. 792 (1973)), overruling on other grounds recognized by
Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009). However,
the McDonnell Douglas legal framework is also used to evaluate §
1981 claims. See, e.g., Murrell v. Ocean Mecca Motel, Inc., 262
F.3d 253, 257 (4th Cir. 2001).

<u>Greensboro</u>, 807 F. Supp. 2d 476, 484 (M.D.N.C. 2011)

("Employment discrimination claims carry no heightened pleading

standard, and an employment discrimination complaint need not

contain specific facts establishing a prima facie case."

(citations omitted)).  The proper legal standard for determining

whether a § 1981 claim has been pled sufficiently to survive a

motion to dismiss requires:

> a plaintiff [to] allege facts in support of
> the following elements: (1) the plaintiff is
> a member of a racial minority; (2) an intent
> to discriminate on the basis of race by the
> defendant; and (3) the discrimination
> concerned one or more of the activities
> enumerated in the statute (i.e., make and
> enforce contracts, sue and be sued, give
> evidence, etc.).

<u>Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 7 F.3d 1085,

1087 (2d Cir. 1993); <u>see</u> <u>also</u> <u>Jordan v. Alternative Res. Corp.</u>,

458 F.3d 332, 345 (4th Cir. 2006) ("For a § 1981 discrimination

claim, [a plaintiff] must allege that he is a member of a racial

minority; that the defendants' termination of his employment was

because of his race; and that their discrimination was

intentional." (citing <u>Mian</u>, 7 F.3d at 1087)).[12]

---

[12]    "Despite its language 'as is enjoyed by white citizens,'
§ 1981 prohibits intentional racial discrimination against
whites . . . ." <u>Stock v. Universal Foods Corp.</u>, 817 F. Supp.
1300, 1305 (D. Md. 1993).

2.  The Alleged Facts

Plaintiff is a 54-year-old Caucasian male, and Chapman is
an African-American male.  Chapman is the Terminal Manager at
Defendant's Baltimore Terminal.  According to the Amended
Complaint, when Chapman was the Operations Manager at
Defendant's Washington, DC Terminal, he "announced . . . that he
was going to make the DC YRC Terminal into an 'all black
terminal.'"  [Document 16] at 4.  Chapman has used Defendant's
"disciplinary rules to terminate older Caucasian employees from
YRC" since he became the Terminal Manager at Defendant's
Baltimore Terminal in or around 2011. Id.

Chapman has engaged in "racially disparate treatment
practices" on multiple occasions.  Id.  An African-American
employee who allegedly stole another employee's paycheck and
another African-American employee who allegedly stole YRC
Freight property were neither disciplined, nor terminated.
Chapman terminated an older Caucasian employee who "was charged
with stealing a magazine and a pair of gloves at a Sheetz
facility in North Carolina, while driving for [YRC Freight],"
but who was not convicted, without asking the employee "to
explain the event." Id.  In addition, Plaintiff "complained to
the Human Resources Department that Gary Chapman had stolen

$300.00 from the Plaintiff, but he has not been disciplined for it." Id.

Since beginning as the Terminal Manager in Baltimore, Chapman has terminated at least eight "older Caucasian employees on, what are believed to be pre-textual reasons, usually related to illness or injury." Id. "The termination of the older Caucasian employees is out of proportion to the [termination] of African American employees." Id. Plaintiff alleges that he is also an "older Caucasian employee" who was subsequently removed "from the employment rolls of the Baltimore Terminal" after making a request for medical leave. Id. at 5.


### 3. Sufficiency

Plaintiff alleges that his termination from YRC Freight was a violation of 42 U.S.C. § 1981 because Chapman terminated him "because of his Caucasian race." Id. Defendant contends that dismissal is appropriate because "Plaintiff's vague and conclusory assertions regarding the alleged treatment of African Americans as compared to Caucasian employees is not enough to prevent the dismissal of his Section 1981 claim." [Document 19-1] at 12.

Plaintiff alleges that Chapman used Plaintiff's FMLA leave request "as a convenient excuse to remove another older

Caucasian employee from [Defendant's] employment," which amounted to discrimination on the basis of race in violation of § 1981. See [Document 16] at 5. In support of that claim, Plaintiff provides four examples of allegedly "racially disparate treatment practices employed by Gary Chapman." See id. at 4. Three of the four examples involve allegations of theft by YRC Freight employees. Plaintiff alleges that an African-American employee of Defendant who stole another employee's paycheck and another African-American employee who stole property from Defendant were neither disciplined, nor terminated. However, Plaintiff does not allege that Chapman was even aware of these events. Plaintiff does allege that Chapman fired a Caucasian employee for allegedly stealing a magazine and a pair of gloves, but the fact that a Caucasian employee was fired and two African-American employees were not, does not present a plausible claim that Chapman engaged in a pattern of racially discriminatory treatment that included the termination of Plaintiff's employment.[13]

_____

[13]    Plaintiff alleges that he complained to the YRC Freight Human Resources Department that Chapman stole $300.00 from him but that Chapman has not been disciplined for the alleged theft. [Document 16] at 4. Plaintiff has not alleged that Chapman was aware of this complaint to Human Resources. Therefore, any implication that these facts reflect racially disparate treatment by Chapman cannot be attributed to Chapman's conduct, which is the subject of the Amended Complaint, because the Human

Plaintiff also supports his § 1981 claim by listing the names of eight "older Caucasian employees" who were purportedly fired "on, what are believed to be pre-textual reasons." Id. However, Plaintiff fails to provide any specific allegations regarding the termination of those individuals' employment, other than to state that the purported pretext was "usually related to illness or injury." Id.

"Legal inferences drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments are not part of the consideration" for whether a complaint will survive a motion to dismiss filed pursuant to Rule 12(b)(6). Dolgaleva v. Virginia Beach City Pub. Sch., 364 F. App'x 820, 827 (4th Cir. 2010). The factual allegations in the Amended Complaint, present no more than a possibility that Chapman violated § 1981. See Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) ("The plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" (citation omitted)).

The Court concludes that Plaintiff has failed to plead a plausible race-based discrimination claim under § 1981.

---

Resources Department received a complaint about Chapman, not from him.

C.  Amendment

The Court has determined that Plaintiff has not pled adequately his FMLA claims because he did not present a specific allegation establishing that he met the 1,250-hour requirement. It is doubtful that there will be a genuine issue as to this element.  Moreover, Plaintiff has pled adequately the remaining elements of his FMLA claims.  Therefore, the Court will defer dismissal of the claims in Counts One and Two to allow Plaintiff to file a Supplement to the Amended Complaint to add allegations relating to the 1,250-hour requirement.

The Court has determined that Plaintiff has failed to plead adequately a § 1981 claim.  The Court will not now permit Plaintiff to file a Second Amended Complaint to restate the claim.  However, assuming that Plaintiff files the requisite Supplement regarding his FMLA claims, he will be able to engage in discovery relating to the reasons why YRC Freight terminated his employment.  This discovery may include discovery into alleged racial and/or age discrimination to refute YRC Freight's contention that there were valid reasons for the termination. Therefore, dismissal of Count Three will be without prejudice to a motion seeking to reassert the § 1981 claim should Plaintiff present an adequate evidentiary basis for such a claim.

IV.      CONCLUSION

        For the foregoing reasons:

        1.    Defendant's Motion to Dismiss [Document 19] is
              GRANTED IN PART.

        2.    All claims in Counts One and Two shall be
              dismissed unless Plaintiff files a Supplement to
              the Amended Complaint by January 12, 2014
              alleging facts that present a plausible claim
              that he met the 1,250-hours-worked standard of
              29 U.S.C. § 2611(2)(A)(ii).

        3.    All claims in Count Three are dismissed without
              prejudice to the ability of Plaintiff to seek
              leave, subject to a deadline to be set by further
              Order, to reassert the claim upon a showing of an
              adequate evidentiary basis for such a claim.

        4.    Plaintiff shall arrange a telephone conference to
              be held by January 12, 2014 regarding the
              scheduling of further proceedings herein.


SO ORDERED, on Thursday, December 12, 2013.


                              _____/s/_____
                                 Marvin J. Garbis
                              United States District Judge